IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| SHEETZ, INC., *et al.*, | : | Case No. 3:24-cv-00059 |
| Plaintiffs, | : | |
| | : | District Judge Michael J. Newman |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| CITY OF CENTERVILLE, *et al.*, | : | |
| Defendants. | : | |

## OPINION AND ORDER

This action arises from a real estate contract entered into by Plaintiffs. Asserting that certain Defendants tortiously interfered with their contractual relationship, and that other Defendants unlawfully denied approval of Plaintiffs' site plan, Plaintiffs filed this action in the Montgomery County Common Pleas Court. Defendants removed the action to this Court on the basis of federal question jurisdiction.

This matter is now before the Court upon Plaintiffs' Motion to Disqualify Mark Chilson as Counsel of Record for Defendant Epiphany Evangelical Lutheran Church ("Motion to Disqualify," Doc. No. 13). For the reasons set forth below, Plaintiffs' Motion to Disqualify is GRANTED.

I.   STATEMENT OF FACTS

The following statement of facts is taken from the allegations set forth in Plaintiffs' Complaint (Doc. No. 1-1, PageID 6-54), the Answer and Counterclaim of Defendant Epiphany Evangelical Lutheran Church (Doc. No. 35, PageID 560-89), and

1

the Answer of Defendant Graceworks Lutheran Services d/b/a Bethany Lutheran Village (Doc. No. 36, PageID 590-99). At this stage of the litigation, the Court makes no findings regarding the accuracy of the parties' allegations.

This lawsuit arises from a dispute over property located at 6318 Far Hills Avenue (the "Property"), which formerly housed a restaurant ("Elsa's South"). Defendant Epiphany Evangelical Lutheran Church ("Epiphany") operates a church and preschool on land adjacent to the Property. Defendant Graceworks Lutheran Services d/b/a Bethany Lutheran Village ("Bethany Village") operates a residential senior retirement community on land across the street from the Property. Attorney Mark Chilson is a board member of Bethany Village, and also acted as legal counsel for Epiphany both before and during this lawsuit. (Doc. No. 1-1, ¶¶ 3, 6-7 & 37-38, PageID 7-8 & 11.)

Together with other investors, William Hemmert opened Elsa's South on the Property in 1981. Epiphany, through its entity ELC-SV, LLC, purchased the Property in 1999. From 1999 to 2017, Epiphany leased the Property to Elsa's South. During that time, Epiphany benefitted from the sale, distribution, and consumption of alcohol on the Property. (Doc. No. 1-1, ¶¶ 11-12 & 14-17, PageID 8-9.)

In 2017, William Hemmert formed Hemmert Far Hills Properties LLC ("Hemmert Far Hills") and bought the Property from Epiphany. After a family tragedy in 2020, Mr. Hemmert eventually decided to sell Elsa's South. (Doc. No. 1-1, ¶¶ 18-21, PageID 9.)

In the summer of 2022, Hemmert Far Hills entered into a real estate contract in which it agreed to sell the Property to Plaintiff Sheetz, Inc. ("Sheetz"), which operates convenience stores, and Plaintiff Morse Road Development d/b/a Skilken Gold ("Skilken

2

Gold"). The Sheetz purchase became public in December 2022. Plaintiffs allege that "[o]nce it was learned that there was a contract to build a Sheetz at the [Property], Epiphany and Bethany Village began to orchestrate a plan to see that the Sheetz would not be built." (Doc. No. 1-1, ¶¶ 1-2 & 22-26, PageID 7 & 9-10.)

It is undisputed that on April 20, 2023, William Hemmert and his son, Jason Hemmert, discussed the Sheetz contract with attorneys Thomas Intilli and Mark Chilson. What happened during that meeting is, however, disputed.

Plaintiffs allege that William and Jason Hemmert agreed to meet with a local attorney, who is a close friend, to discuss the Sheetz deal. Unbeknownst to them, that attorney invited Attorney Chilson to attend the meeting. Attorney Chilson informed the Hemmerts that he was a representative of Epiphany and Bethany Village, and was legal counsel for Epiphany. Attorney Chilson stated that neither Epiphany nor Bethany Village wanted to have a Sheetz located on the Property. Attorney Chilson indicated that Epiphany and Bethany Village had a three-way business plan in mind with a third entity for the Property. He stated that Epiphany, Bethany Village, and the third entity would pay the Hemmerts a higher price than Sheetz had agreed to pay for the Property. On behalf of Epiphany and Bethany Village, Attorney Chilson asked the Hemmerts to "kill the deal" with Skilken Gold and Sheetz. He said that the Sheetz purchase would not go through and that the Centerville City Council would not allow a Sheetz to be built on the Property. Jason Hemmert told Attorney Chilson that he should not be talking with them, and that Hemmert Far Hills would not try to kill the deal. The meeting ended amicably. (Doc. No. 1-1, ¶¶ 31-46, PageID 10-12.)

3

Epiphany admits that Attorney Chilson attended the April 20, 2023 meeting and spoke on its behalf. Epiphany further admits that Attorney Chilson provides legal services to the church. With respect to Plaintiffs' allegations about what Attorney Chilson said during the meeting, Epiphany states that it "is without sufficient information to admit or deny the . . . allegations . . . and, therefore, denies same." (Doc. No. 35, ¶¶ 31-46, PageID 564-65.) Notably, however, although his co-counsel signed the Answer, Attorney Chilson is listed as Trial Counsel in the Answer's signature block. (*Id*. at PageID at 581.)

For its part, Bethany Village admits that Attorney Chilson is a board member. However, Bethany Village denies that Attorney Chilson attended the April 20, 2023 meeting either on its behalf or as its agent. With respect to Plaintiffs' allegations about what Attorney Chilson said during the meeting, Bethany Village similarly states that it is without information sufficient to form a belief as to the truth of those allegations, and therefore denies them. (Doc. No. 36, ¶¶ 14-19, PageID 592.)

Ultimately, the Centerville City Council reversed the decision of the Centerville Planning Commission to approve construction of the proposed gas station. Plaintiffs subsequently filed this action against Defendants Epiphany, Bethany Village, City of Centerville and Centerville City Council. (Complaint, Doc. No. 1-1.) Significantly, Plaintiffs base several of their claims, in part, upon Mr. Chilson's alleged statements during the April 20, 2023 meeting.

In Count One, Plaintiffs have sued Epiphany and Bethany Village for tortious interference with business relations. Plaintiffs allege, among other things, that "Bethany Village (by and through its agent, Mr. Chilson, among others) and Epiphany (by and

4

through its agent, Mr. Chilson, among others) acted with the intent to interfere with Sheetz, Skilken Gold and Hemmert Far Hills' business relations." (Doc. No. 1-1, ¶¶ 71-79, PageID 15.)

In Count Two, Plaintiffs have sued Epiphany and Bethany Village for tortious interference with contractual relations. Plaintiffs allege, among other things, that "Bethany Village (by and through its agent, Mr. Chilson, among others) and Epiphany (by and through its agent, Mr. Chilson, among others) acted with the intent to procure the contract's breach." (Doc. No. 1-1, ¶¶ 80-88, PageID 15-16.)

In Count Five, Plaintiffs have sued Defendants Epiphany and Bethany Village for civil conspiracy. Plaintiffs allege, among other things, that "Bethany Village (by and through its agent, Mr. Chilson, among others) and Epiphany (by and through its agent, Mr. Chilson, among others) acted in malicious combination to cause injury to Plaintiffs." (Doc. No. 1-1, ¶¶ 108-112, PageID 18.)

## II. LAW AND ANALYSIS

### A. Applicable Legal Standard

"Motions to disqualify are viewed with disfavor[,] and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Kirsch v. Dean*, No. 17-05650, 2017 U.S. App. LEXIS 21257, at *4 (6th Cir. Oct. 25, 2017) (internal citation omitted). However, district courts have "'substantial latitude' to disqualify counsel when 'a potential conflict exists which may or may not burgeon into an actual conflict as the trial progresses.'" *Kennedy v. Stewart*, 567 F. App'x 433, 435 (6th Cir. 2014) (quoting *Wheat v. U.S.*, 486 U.S. 153, 158 (1988)).

5

> **B. Attorney Chilson Should Be Disqualified As Counsel For Defendant Epiphany Under Rule 3.7(a) of the Ohio Rules of Professional Conduct**

Plaintiffs seek to disqualify Attorney Chilson under Rule 3.7(a) of the Ohio Rules of Professional Conduct, which this Court has adopted. *See* S.D. Ohio Model Fed. R. Disciplinary Enf't IV. That disciplinary rule provides:

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case;
>>
>> (3) the disqualification of the lawyer would work *substantial* hardship on the client.

Ohio Rule Prof. Conduct 3.7(a) (emphasis in original). The Comment to Rule 3.7(a) explains the rationale for this prohibition:

> [1] Combining the roles of advocate and witness can prejudice the tribunal and the opposing party . . . .
>
> [2] The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness. The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.
>
> [3] To protect the tribunal, division (a) prohibits a lawyer from simultaneously serving as counsel and necessary witness except in those circumstances specified in divisions (a)(1) to (3). . . .
>
> [4] . . . [D]ivision (a)(3) recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. **Whether the tribunal is likely to be misled or the opposing**

6

> ***party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses.*** Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client.

Comment to Ohio Rule Prof. Conduct 3.7(a) (emphasis added).

Attorney Chilson argues that he is not likely to be a necessary witness regarding his statements and conduct during the April 20, 2023 meeting. The Court disagrees. Three of Plaintiffs' legal claims are based, in part, upon Attorney Chilson's actions during that meeting. According to Plaintiffs, Attorney Chilson told the Hemmerts that he was acting on behalf of Defendants Epiphany and Bethany Village when he intentionally attempted to persuade them to breach their contract with Sheetz and Skilken Gold. Although Attorney Chilson argues that another meeting participant (namely, Mr. Intilli) could testify about what occurred, Mr. Intilli lacks the personal knowledge to testify about Attorney Chilson's intentions. Mr. Intilli also lacks the personal knowledge to testify about whether Attorney Chilson was acting on behalf of Bethany Village during the meeting, a fact that Plaintiffs allege is true but Bethany Village denies.

The Court also finds that Attorney Chilson's likely testimony at trial will relate to contested issues. Plaintiffs rely heavily on Attorney Chilson's alleged statements to support their tort claims against Epiphany and Bethany. Epiphany, which is Attorney Chilson's client in this litigation, has perplexingly responded that it cannot admit or deny Plaintiff's allegations about the substance of Attorney Chilson's statements because it lacks the knowledge necessary to admit or deny the truth of those allegations. Bethany

7

Village similarly claims not to know what Attorney Chilson said during the meeting, although it denies that Attorney Chilson was acting on its behalf. Whether, and to what extent, Attorney Chilson will dispute Plaintiff's allegations is unknown at this time. But it appears to be a near certainty that these factual issues will be vigorously contested at trial.

The Court further finds that the disqualification of Attorney Chilson will not work a substantial hardship on his client. Epiphany is also represented in this litigation by three attorneys from Bricker Graydon LLP, which is a reputable and well-known law firm. There is no basis for concluding that disqualifying one of Epiphany's four attorneys will work a substantial hardship upon it in this litigation.

Finally, the Court finds that disqualification is necessary to comply with the purpose of Rule 3.7(a), which is to avoid prejudice to the tribunal and opposing party under the advocate-witness rule. *See* Comment to Ohio R. Prof. Conduct 3.7(a). Given the central importance of Attorney Chilson's testimony about his own statements and conduct during the April 20, 2023 meeting, as well as the probability that his testimony will conflict with the testimony of other witnesses, it is necessary to disqualify him from representing Epiphany in this litigation under Rule 3.7(a).[1]

### III. CONCLUSION

For the reasons stated, Plaintiffs' Motion to Disqualify (Doc. No. 13) is **GRANTED**. Attorney Chilson is **DISQUALIFIED** as counsel for Defendant Epiphany and shall immediately cease to act as its attorney in this matter.

---

[1] Given the Court's conclusion about the applicability of Rule 3.7(a), it need not and does not reach the related but separate issue of whether disqualification is required by the common-law unsworn witness rule. *See* Doc. No. 31 (requesting briefing on that issue).

**IT IS SO ORDERED.**

                                          */s/ Caroline H. Gentry*
                                          Caroline H. Gentry
                                          United States Magistrate Judge

## **Notice of Procedure on Objections**

Pursuant to Fed. R. Civ. P. 72(a), any party may serve and file specific, written objections within FOURTEEN days after being served with this Order. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to SEVENTEEN days if this Order is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Order objected to and shall be accompanied by a memorandum of law in support of the objections. If the Order is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within FOURTEEN days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).